UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Bonilla as Chairman and Ken Walters as Co-Chairman of the Board of Trustees for the Operating Engineers Health and Welfare Trust Fund, et al,<br><br>Plaintiffs,<br><br>v.<br><br>Neville Structures dba Neville Brothers, Inc., a business entity, and Steve Neville, an individual,<br><br>Defendants.<br>_____/ | No. C-05-3410 CW (WDB)<br><br>**REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT** |

Plaintiffs are various fringe benefit trust funds established for the benefit of members of Operating Engineers Local Union No. 3 of the International Union of Operating Engineers ("union"), and the trustees of those fringe benefit trust funds. *See*, Complaint, filed August 23, 2005. Defendant, Neville Structures dba Neville Brothers, Inc., is bound by a collective bargaining agreement and various trust agreements to make timely contributions to plaintiff trust funds for covered work performed by Neville Structures employees. Declaration of Wayne McBride in Support of Plaintiffs' Motion for Default Judgment, filed on January 6, 2006, ("McBride Decl.") at ¶¶4 and 5. Defendant Steve Neville is an individual and an

1

owner and authorized representative of Neville Structures.  Complaint at ¶5; McBride Decl., at ¶4 and Ex. A.

On August 23, 2005, plaintiffs filed a complaint against Neville Structures and Steve Neville seeking to collect unpaid contributions due to multi-employer benefit plans and to obtain monthly reports pursuant to the governing collective bargaining agreement.  See, Complaint.  Plaintiffs also allege that Neville Structures and Steve Neville refuse to submit to an audit as required by the collective bargaining agreement, and ask the Court to compel defendants to comply with such an audit.  *Id.*

Plaintiffs served defendants with a copy of the Complaint.  Summons and Proofs of Service, filed on September 16, 2005.  Defendants have not responded to the Complaint.

In response to plaintiffs' application for entry of default, the Clerk of the Court entered default as to Neville Structures and Steve Neville on December 2, 2005.

On January 6, 2006, plaintiffs filed and served their motion for default judgment.  See, Motion for Default Judgment and Proof of Service ("Motion").  Judge Wilken referred plaintiffs' Motion to the undersigned.  Order, filed December 8, 2005.

On January 27, 2006, this court invited plaintiffs to submit supplemental briefing in connection with some issues in their Motion.  On February 22, 2006, plaintiffs filed their supplemental submissions.

On March 29, 2006, this court conducted a hearing in connection with plaintiffs' Motion.  No appearance was made on defendants' behalf.

In their Motion, plaintiffs seek a judgment against Neville Structures and Steve Neville, individually, in the amount $35,690.39 to recover unpaid contributions, liquidated damages, interest, attorneys' fees and costs.  McBride

Decl., at ¶11; Supplemental Declaration of Anne Bevington in Support of Plaintiffs' Motion for Default Judgment, filed February 22, 2006, ("Supp. Bevington Decl.") at ¶2; Supplemental Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Default Judgment, filed February 22, 2006, ("Supp. Memo.") at 1-2. Plaintiffs also seek an order compelling defendants to produce certain financial records, to submit to an audit of defendants' payroll records, and to pay all additional amounts deemed owing by the auditor. *Id*. Finally, plaintiffs request a declaration that they are entitled to certain post-judgment relief. Motion at 8-9.

**I.    Entitlement to Entry of Default Judgment**

Plaintiffs seek entry of judgment by default against the entity Neville Structures as well as against Steve Neville, individually.

Plaintiffs served Neville Structures and Steve Neville with their motion for default judgment. See, Proof of Service, filed on January 10, 2006.

Neville Structures has failed to respond to the Complaint or otherwise to appear in the proceedings, and the Clerk of the Court entered default as to this defendant.

Plaintiffs seek to hold Mr. Neville liable as a "fiduciary." Motion at 5-6; Supp. Memo., at 4-5. Plaintiffs' Complaint contains <u>no</u> allegations to the effect that Mr. Neville acted as a fiduciary or that he breached a fiduciary obligation. Consequently, plaintiffs have not pled a claim for breach of fiduciary duty against Mr. Neville, and no such allegations can be deemed admitted as a result of Mr. Neville's default. We, therefore, RECOMMEND that the District Court deny plaintiffs' request to impose liability on Mr. Neville on the basis that he has breached a fiduciary duty.

Even if plaintiffs had pled a claim for breach of fiduciary duty, it is not clear that Mr. Neville can be considered a fiduciary. Plaintiffs contend that Mr. Neville is a fiduciary because he exercised control over "plan assets." Ninth Circuit case law indicates, however, that <u>employer</u> contributions do not become "plan assets" until they are paid over to the Trust. *Cline v. Industrial Maintenance Engineering & Contracting Co*, 200 F.3d 1223, 1234 (9th Cir. 2000). Regulation 29 C.F.R. §2510.3-102, cited by plaintiffs, pertains to <u>employee</u> contributions.

Citing authorities from outside the Ninth Circuit, plaintiffs contend that the pertinent inquiry is whether the <u>Trust Agreement</u> provides that employer contributions become plan assets from the moment they become due. Those cases in which courts conclude that the Trust provides that contributions become plan assets from the moment due involve contract provisions that more clearly are intended to govern this question. Moreover, to effect the desired result, the parties to the contract invoke terms like "vesting" -- terms that clearly express their intention. It is not clear that the purpose of the Trust provision cited by plaintiffs was to address this particular issue,[1] and the language in the Trust Agreement that plaintiffs contend provides that Neville Structure's contributions become plan assets from the moment they are due is ambiguous at best. *E.g.,* McBride Decl., at Ex. D (reference to monies "received or held" undermines plaintiffs' position).

Furthermore, even if the Trust Agreement did provide that employer contributions become plan assets from the moment they are due, this would not necessarily lead to a conclusion that Mr. Neville is a fiduciary. *Chicago Dist.*

---

[1] Among other things, the cited provision is contained in an <u>amendment</u> to the contract, not in the main body of the Trust Agreement, and the stated purpose of the amendment is only to establish the Operating Engineers Annuity Plan separately from the Pension Plan. McBride Decl., at Ex. D. Moreover, as we read it, the provision cited by plaintiffs refers to that Annuity Trust Fund and not to any of the other funds to which Neville Structures is bound to make contributions. Therefore, the evidence is insufficient to support a finding that the parties intended that all contributions owed by defendants to <u>each</u> of the Trusts would become "plan assets" from the moment due.

*Council of Carpenters Pension Fund v. Angulo*, 150 F.Supp.2d 976 (N.D. Ill. 2001), cited by plaintiffs, states,

> [t]his Court cannot credit the notion that every delinquent employer's nonpayment of a contribution equates to its exercising its control over the "disposition" of a plan's assets, so as to impose fiduciary liability by reason of the nonpayment.

See also, *Trustees of the National Elevator Ins. Pension v. Lutyk*, 140 F.Supp.2d 407 (E.D. PA 2001), cited by plaintiff, (although the court looks to Trust Agreement to determine whether contributions are plan assets from the moment due, "there is no general rule conferring fiduciary status merely on the basis of delinquent employer contributions"). Accordingly, even if plaintiffs could demonstrate that courts in the Ninth Circuit look to the Trust Agreement to determine when employer contributions become plan assets, and even if the Trust Agreement at issue here unambiguously provided that such contributions vested in the employees from the moment they became due, plaintiffs have not presented authority for the position that a mere delinquency in payment by an employer amounts to "exercising . . . control" over plan assets for purposes of 29 U.S.C. §1002(21)(a) (defining plan fiduciary).

Plaintiffs' failure to plead and/or establish that Mr. Neville is a fiduciary is not fatal to their attempt to obtain a judgment against him in his individual capacity. Plaintiffs also claim that Mr. Neville is liable as an "employer" under ERISA. Plaintiffs allege that Steve Neville is the owner and operator of Neville Structures and that the he and the business are one and the same. Complaint at ¶5. Mr. Neville has failed to respond to the Complaint or otherwise to appear in the proceedings, and the Clerk of the Court entered default as to Mr. Neville. By not responding to the Complaint, Steve Neville has conceded that plaintiffs' allegations are true.

Given defendants' complete failure to appear and the significant risk of prejudice to the employee beneficiaries of the fringe benefit trusts when an

employer fails to make the required contributions, the sufficiency of plaintiffs' complaint, and the apparent merit of plaintiffs' substantive claims, we RECOMMEND that Judge Wilken find that plaintiffs are entitled to judgment by default against Neville Structures and Steve Neville, individually.  See, F.R.C.P. 55(b); *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986).

## II.     Specific Items of Relief Sought by Plaintiffs

Section 1132(g)(2) of ERISA provides that in an action for delinquent contributions

> in which a judgment in favor of the plan is awarded the court *shall* award the plan --
> (A)   the unpaid contributions,
> (B)   interest on the unpaid contributions,
> (C)   an amount equal to . . . (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
> (D)   reasonable attorneys' fees and costs of the action . . ., and
> (E)   such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan . . ..

29 U.S.C. §1132(g)(2) emphasis added.

### A.     Unpaid contributions

Plaintiffs seek unpaid contributions, owing pursuant to the governing collective bargaining and trust agreements, for the period November 2004 through March 2005 in the amount $23,296.39.  McBride Decl., at ¶11; Motion at 7; Supp. Memo., at 2.

Defendants are signatories to a collective bargaining agreement between the union and defendants' "bargaining agent," the Association General Contractors of California, Inc. ("AGC").  McBride Decl., at ¶4 and Ex. A.  The collective bargaining agreement incorporates applicable Trust Agreements, and signatories agree to be bound by the terms of those agreements.  McBride Decl., at ¶5, Ex. A and C.  The collective bargaining agreement governs employer contributions to the

6

various employee fringe benefit trust funds and obligates employers to pay specified amounts into employee benefit funds on behalf of defendants' employees who perform covered work. *Id*.

Defendants became signatories to the collective bargaining agreement on September 15, 2004. McBride Decl., at Ex. A. Defendants have not invoked the procedures that would release them from their obligations under that agreement. McBride Decl., at ¶4. Accordingly, Neville Structures is obligated to pay contributions for covered work performed by its employees for the period September 15, 2004, to the present. *Id.*

Because plaintiffs' request for unpaid contributions is supported by the evidence, we RECOMMEND that the District Court enter judgment against defendants in the amount $23,296.39 for unpaid contributions for the period November 2004 through March 2005.

### B. Interest and Liquidated Damages

Plaintiffs seek interest relating to the unpaid contributions for November 2004 through March 2005 and liquidated damages relating to unpaid contributions for the period October 2004 through March 2005. Motion at 7; McBride Decl., at ¶11; Supp. Bevington Decl., at ¶2; Supp. Memo., at 2-3.

#### 1. Liquidated Damages

Plaintiffs seek liquidated damages for the period October 2004 through March 2005 at the contract rate of $35.00 per delinquent contribution or 15% of the amount of the contribution due to each separate Trust Fund, whichever is greater. McBride Decl., at ¶17 and Ex. B.[2]

---

[2] Plaintiffs' Motion says "$45.00 or 15% of the amount due to each Trust Fund." Motion at 4. We assume this is an error and use the figure set forth in the evidence, Mr. McBride's declaration.

7

ERISA compels the court to award plaintiffs "liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court [as unpaid contributions]." 29 U.S.C. §1132(g)(2)(C)(ii). Liquidated damages are "mandatory and not discretionary" if "the following three requirements [are] satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award." *Northwest Administrators, Inc., v. Albertson's Inc.,* 104 F.3d 253 (9th Cir. 1996) citing *Idaho Plumbers & Pipefitters v. United Mechanical Contractors, Inc.,* 875 F.2d 212 (9th Cir. 1989).

Plaintiffs have submitted evidence that supports a finding that contributions for November 2004 through March 2005 were delinquent and unpaid at the time plaintiffs filed their lawsuit on August 25, 2005, and that the collective bargaining agreement together with Trust Agreements provide for an award of liquidated damages on such sums at the rate of $35.00 per delinquent contribution or 15% of the amount of the delinquent contribution due to each separate Trust Fund, whichever is greater. McBride Decl., at ¶17 and Ex. B. Therefore, plaintiffs have satisfied the first and third *Northwest* requirements with respect to contributions for the period November 2004 through March 2005.

If Judge Wilken adopts our recommendation to enter judgment against defendants for unpaid contributions for November 2004 through March 2005 in the amount $23,296.29, plaintiffs will have satisfied the second requirement as well.

The amount of liquidated damages accrued with respect to the unpaid contributions for November 2004 through March 2005 is $3,336.64. McBride Decl., at ¶11 and Supp. Memo., at 2 and 3.

We RECOMMEND that, if Judge Wilken enters judgment against defendants for unpaid contributions known to be delinquent at this time, she also

8

enter judgment for liquidated damages in connection with the contributions due during the period November 2004 through March 2005 in the amount $3,336.64.

Plaintiffs also ask the Court to award liquidated damages with respect to the contributions for October 2004. Motion at 1; Supp. Memo., at 3. Although defendants were delinquent with respect to these contributions, defendants paid those contributions *before* plaintiffs filed this action on August 25, 2005. Plaintiffs are not entitled to <u>statutory</u> liquidated damages with respect to contributions that were delinquent but were paid before the date the Complaint was filed. See, Order re Supplemental Briefing re Motion for Default Judgment, filed January 27, 2006, at 2-4. Plaintiffs might, however, be entitled to liquidated damages for the October 2004 contributions as a matter of <u>contract</u>. *Id*.

Plaintiffs have chosen (presumably out of concern about transaction costs) not to attempt to make the evidentiary showing necessary to establish entitlement to contract-based liquidated damages. Supp. Memo., at 3. Plaintiffs argue, however, that the Court should not require plaintiffs to make the requisite showing where, as here, defendants have not appeared. *Id*.

"The general rule of law is that upon default the factual allegations of the complaint, <u>except those relating to the amount of damages</u>, will be taken as true." *Geddes v. United Financial Group*, 559 F.2d 557 (9th Cir. 1977) emphasis added. See also, F.R.C.P. 55(b) ("If, . . . , it is necessary to . . . determine the amount of damages or to establish the truth of any averment by evidence . . . , the court may conduct such hearing or order such references as it deems necessary and proper"). Plaintiffs are required to "prove up" their damages. The court cannot recommend an award of an element of damages that plaintiffs have not substantiated through competent evidence. Accordingly, the court RECOMMENDS that Judge Wilken DENY plaintiffs' request for liquidated damages pertaining to the delinquent contributions for October 2004.

//

### 2. **Interest**

If the Court enters judgment in plaintiffs' favor for unpaid contributions, ERISA requires the Court to award plaintiffs "interest on the unpaid contributions." 29 U.S.C. §1132(g)(2)(B). ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan." 29 U.S.C. §1132(g)(2).

Plaintiffs seek interest on the unpaid contributions at the annual rate of 12%.[3] McBride Decl., at ¶7. Plaintiffs have submitted evidence that supports a finding that 12% is the applicable interest rate under the Trust Agreements. McBride Decl., at Ex. B.

We, therefore, RECOMMEND that the District Judge grant plaintiffs' request for judgment for interest on the unpaid contributions at the rate of 12% on the delinquent contributions for November 2004 through March 25, 2005, from the date due through the date paid or, if as yet unpaid, through the date of judgment.

Plaintiffs' current interest calculation includes interest that has accrued through March 25, 2006,[4] in the amount $3,162.29. Supp. Memo., at 2. Plaintiffs also request additional interest in the amount $7.66 per day after March 25, 2006. *Id*. However, if defendants make a payment towards the delinquent contributions prior to entry of judgment this daily rate will be lower. Therefore, in the event Judge Wilken adopts our recommendation, we also RECOMMEND that the Court permit plaintiffs to file an additional evidentiary submission calculating interest through the date of judgment.

---

[3] Plaintiffs originally sought interest on unpaid contributions, liquidated damages, and previously accrued interest. Motion at 4. In their Supplemental Memorandum, plaintiffs have chosen to forego their request for interest on liquidated damages and previously accrued interest and now seek interest on unpaid contributions only. Supp. Bevington Decl., at ¶2.

[4] Plaintiffs' supplemental submission at 2:5 states that interest is calculated through March 25, 2006, and at 2:27 it states that interest was calculated through February 25, 2006. At the March 29, 2006, hearing counsel confirmed on the record that the correct date is March 25, 2006.

### C. Request for Audit, Production of Monthly Reports, and Amounts Owing at Conclusion of Audit

The collective bargaining agreement to which defendants are signatories governs employer contributions to the various employee fringe benefit trust funds and obligates the employer to submit monthly reports documenting the number of hours worked by covered employees together with the monthly payments indicated as owing by each month's report. E.g., McBride Decl., at ¶12 and Ex. F. The governing Trust Agreements also obligate the employer to submit to an audit of its records for the purpose of determining whether the employer has paid the appropriate amount of contributions to the trusts. McBride Decl., at ¶20 and Ex. H.

Section 1132 of ERISA authorizes the Court to award "such legal and equitable relief as the court deems appropriate." 29 U.S.C. §1132(g)(2)(E). Defendants (according to plaintiffs' unrebutted allegations) have breached the collective bargaining agreement by, *inter alia*, refusing to submit to an audit. McBride Decl., at ¶20. As a result of the breach, plaintiffs have been unable to verify the amount of defendants' obligations. Plaintiffs seek an order compelling defendants to submit to an audit for the period from September 15, 2004, through the present. McBride Decl., at ¶20; Motion at 1.

Additionally, plaintiffs present evidence that the auditor will need, at a minimum, the following documents:

> Individual earnings records; Federal Tax Forms W-3/W-2 and 1069/1099; Reporting forms for all Trust Funds, State DE-3/DE-6 Tax Reports; Workers' compensation insurance; Employee time cards; Payroll Registers/Journals; Quarterly payroll tax returns (Form 941); Check register and supporting cash vouchers; Forms 1120, 1040 or partnership tax returns; General ledger; Source records, including time cards and time card summaries for all employees, Certified payroll reports; Personnel records indicating job classifications and hire/termination dates; Cash disbursement journal; Vendor invoices; Copies of subcontract agreements; Cash receipts journal; Job costs records; Records of related entities; and any other books and records that may be necessary to complete the auditor's determination or provide additional explanation of defendants' financial records.

McBride Decl., at ¶21.

Plaintiffs' above list of documents seeks "records of related entities." With respect to this piece of plaintiff's request, the court limits plaintiffs' request as follows. "Records of related entities" refers to records from Neville Structures, Neville Brothers, Inc., and any entity Steve Neville has operated during the period covered by the audit that appears to offer work covered under the collective bargaining agreement. See, Transcript March 29, 2006, hearing.

Accordingly, we RECOMMEND that Judge Wilken enter judgment compelling defendants to submit to an audit for the purpose of determining the amount of fringe benefit contributions owed for the period September 15, 2004, through the present, and that the District Court order defendants to provide relevant records requested by the auditor including, without limitation, those described above.

Plaintiffs represent that the audit procedures followed by plaintiffs include an opportunity for defendants to discuss their records with the auditor and to present comments and/or objections directly within the auditor's report to the Trustees. Declaration of Bruce Disney in Support of Plaintiffs' Motion for Default Judgment, filed February 22, 2006. In addition, the court has directed plaintiffs to provide defendants with an opportunity to provide input directly to the Trustees before the Trustees make their final assessment of the amount owing. See, Transcript March 29, 2006 hearing. Plaintiffs' counsel agreed to do so. *Id.*

Plaintiffs also ask the Court to retain jurisdiction so that following the audit plaintiffs can submit a second motion for additional damages, if any, found owing as a result of the audit.

Because it appears that plaintiffs' practice provides defendants with an opportunity to present challenges to the accuracy of the audit to the Trustees, we RECOMMEND that the District Judge permit plaintiffs to apply to the Court to amend the judgment to include all sums revealed as due and owing by the audit --

12

on the condition that defendants are given sufficient notice of the pendency of any court proceedings and a fair opportunity to challenge the accuracy of the audit before the District Judge.

### D.  Attorneys' Fees and Costs

Section 1132(g) of ERISA requires the Court to award plaintiffs "reasonable attorney's fees and costs of the action" when plaintiffs obtain a judgment in their favor or otherwise obtain the relief sought.  29 U.S.C. §1132(g)(2)(D); *Northwest Administrators*, 104 F.3d at 258.

Plaintiffs seek reimbursement of attorneys' fees and costs in the amount $5,895.07.  Declaration of Anne Bevington in Support of Plaintiffs' Motion for Default Judgment, filed January 6, 2006, ("Bevington Decl.") at ¶5; Declaration of James P. Watson in Support of Motion for Default Judgment, filed February 22, 2006 ("Watson Decl."), at ¶2.

#### 1.  Tasks Performed and Number of Hours Spent on Those Tasks

Plaintiffs seek fees in connection with tasks such as drafting and filing the complaint, requesting default, and the instant Motion.  See, Bevington Decl., at Ex. C.

We have reviewed counsel's billing statements and RECOMMEND that the District Court find that the kinds of tasks performed by counsel were reasonably undertaken.  We also RECOMMEND that the District Court find that counsel expended a reasonable number of hours completing those tasks.

#### 2.  Hourly Rates

Plaintiffs seek reimbursement of their attorneys' time at the rates of $225 per hour for Ms. Bevington and Mr. Watson.  Bevington Decl., at 5.

13

Mr. Watson's and Ms. Bevington's billing rates are commensurate with the prevailing market rate in the Bay Area for lawyers of counsel's skill and experience doing the kind of work these matters involved. Supp. Bevington Decl., at 4; Watson Decl., at ¶4. We RECOMMEND that Judge Wilken approve these hourly rates.

### 3. Costs

Plaintiffs also seek costs in the amount of $562.57. Bevington Decl., at ¶4 and Ex. B. Plaintiffs' costs consist of this Court's filing fee, the cost of service of the Summons and Complaint and other papers filed in this action, photocopies and postage. Bevington Decl., at Ex. B. The items for which reimbursement is sought constitute taxable costs and/or out-of-pocket expenses normally chargeable to the client. Civil L.R. 54-3. *Accord*, *Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) (fee award under 42 U.S.C. §1988). The amounts expended were reasonable. We, therefore, RECOMMEND that Judge Wilken grant plaintiffs' request for costs in the amount $562.57.

### 4. Recommendation

For the reasons set forth above, if Judge Wilken adopts this court's recommendation to enter judgment in favor of plaintiffs on their claim for unpaid contributions, we RECOMMEND that Judge Wilken award plaintiffs costs and fees in the amount $5,895.07.

### E. Post judgment relief

Plaintiffs seek a declaration by the Court that they are entitled to post judgment interest at the contract rate of 12% and that they are entitled to attorneys' fees and costs incurred to enforce the judgment. Motion at 8-9.

We find that plaintiffs' request for post judgment relief is premature. We RECOMMEND that the District Court not address at this time whether plaintiffs are entitled to post-judgment interest and that the Court not address plaintiffs' entitlement to attorneys' fees and costs that might be incurred to enforce the judgment. We also RECOMMEND that Judge Wilken not preclude plaintiffs from requesting post-judgment relief at the appropriate time after Judge Wilken enters a final judgment.

### III. Conclusion

For the reasons stated above, we RECOMMEND that Judge Wilken enter judgment in plaintiffs' favor and against defendants Neville Structures and Steve Neville, individually, for unpaid contributions, liquidated damages, and interest through March 25, 2006, for contributions due for work performed during the period November 2004 through March 2005, attorneys' fees and costs in the amount $35,690.39 plus interest from March 26, 2006, through the date of judgment according to proof.

We further RECOMMEND that Judge Wilken enter an order compelling defendants to submit to an audit for the purpose of determining the amount of fringe benefit contributions owed for the period from September 15, 2004, through the present, and to provide relevant records requested by the auditor, including, but not limited to,

> Individual earnings records; Federal Tax Forms W-3/W-2 and 1069/1099; Reporting forms for all Trust Funds, State DE-3/DE-6 Tax Reports; Workers' compensation insurance; Employee time cards; Payroll Registers/Journals; Quarterly payroll tax returns (Form 941); Check register and supporting cash vouchers; Forms 1120, 1040 or partnership tax returns; General ledger; Source records, including time cards and time card summaries for all employees, Certified payroll reports; Personnel records indicating job classifications and hire/termination dates; Cash disbursement journal; Vendor invoices; Copies of subcontract agreements; Cash receipts journal; Job costs records; Records of related entities; and any other books and records that may be necessary to complete the auditor's

determination or provide additional explanation of defendants' financial records.

We RECOMMEND that Judge Wilken find that "records of related entities" refers to records from Neville Structures, Neville Brothers, Inc., and any entity Steve Neville has operated during the period covered by the audit that appears to offer work covered under the collective bargaining agreement.

Following completion of an audit procedure in which defendants are permitted to participate, we RECOMMEND that Judge Wilken permit plaintiffs to move the Court to amend the judgment for unpaid contributions as determined by the audit, interest at the rate of 12%, and liquidated damages according to proof -- on the condition that defendants are given sufficient notice of the pendency of any court proceedings and a fair opportunity to challenge the accuracy of the audit before the District Judge.

A copy of this court's Proposed Judgment is attached hereto.

**The Court ORDERS plaintiffs to serve a copy of this Report and Recommendation on defendants immediately.**

IT IS SO ORDERED.

Dated: March 30, 2006

/s/ Wayne D. Brazil
WAYNE D. BRAZIL
United States Magistrate Judge

Copies to:
Plaintiffs with direction to serve defendants,
CW, wdb, stats